NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

FAYUN LUO, individually and on behalf
of all others similarly situated,

    Plaintiff,

v.

QIAO XING UNIVERSAL RESOURCES,
RUI LIN WU, JIUJIU JIANG,

    Defendants.

Civ. No. 12-0045

**OPINION**

THOMPSON, U.S.D.J.[1]

This matter comes before the Court upon a motion for default judgment by Lead Plaintiff Xiaolin Chi ("Plaintiff") against Defendants Qiao Xing Universal Resources ("Xing"), a molybdenum-mining company, and Xing officers Rui Lin Wu ("R. Wu"), Zhi Yang Wu ("Z. Wu"), and JiuJiu Jiang ("Jiang"), (collectively "Defendants"). (ECF No. 93.) The motion is unopposed. The Court has decided this matter based upon the written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Plaintiff's Motion is granted.

## BACKGROUND

This case arises out of alleged violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Plaintiff, on behalf of a class of

---

[1] The Honorable Anne. E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1

similarly situated individuals, claims he was damaged by purchasing Xing stock at an artificially-inflated price. (First Am. Compl. ¶ 6, ECF No. 6.)[2] There are two specific courses of conduct that Plaintiff points to as the basis for the alleged violations. First, on December 23, 2010, Xing, through a wholly-owned subsidiary, acquired another mining company, Balinzo Banner Xinyuan Mining Co., Ltd. ("Xinyuan") for $88.4 million USD. (*Id.* ¶ 31.) In press releases related to this acquisition, Xing failed to disclose the required fact that Xing Chairman and CEO R. Wu (*id.* ¶ 11) was a related party because he was also the owner of Xinyuan (Real Gold Mining, Ltd. Global Offering at 178, Rames Decl., Ex. 14, ECF No. 93-16 (offering prospectus of Real Gold Mining, Ltd. discussing Mr. Wu's ownership of Xinyuan)). Second, in June 2011, R. Wu transferred a significant amount of money to a personal account and Xing failed to disclose this transfer on its annual 20-F form filed in July 2011. (*Id.* ¶¶ 35–37.) Plaintiff alleges that both of these actions amount to false and misleading omissions. (*Id.* ¶ 40.) On its April 2012 Form 6-K Report of Foreign Private Issuer to the SEC, Xing included notice of an April 20, 2012 press release announcing an internal investigation by Xing's Audit Committee and the resignation of the chairman of the Audit Committee. (*Id.* ¶¶ 43–44; Form 6-K, Rames Decl., Ex. 3, ECF No. 93-5.) In response, the NASDAQ halted trading on Xing stock on April 16, 2012 when the price of stock was $0.635. (First Am. Compl. ¶ 42; Expert Report of Dr. Werner ¶ 10, ECF No. 93-17.) Trading resumed on May 10, 2012, but the stock price had dropped to $0.18. (Expert Report of Dr. Werner ¶ 10.)

On April 27, 2012, Plaintiff filed a complaint for this action, then filed the First Amended Complaint on June 15, 2012, adding Z. Wu and Aijun Jiang as individual defendants. (ECF No.

---

[2] The Court treats the First Amended Complaint as the operative complaint for this Motion. (*See* Op. at 2 n.3, ECF No. 87.)

6.) Summons were issued for Xing, R. Wu, Jiang, and Z. Wu on February 5, 2013.[3] (ECF Nos. 43–46.) Xiaolin Chi was appointed Lead Plaintiff on March 6, 2013. (ECF No. 47.) All summons were returned executed by April 16, 2014. (*See* ECF Nos. 52–65, 73.) Pursuant to Plaintiff's motion, default was entered against Defendants Xing, R. Wu, Jiang, and Z. Wu based on the First Amended Complaint on July 7, 2014. (ECF No. 74.) On July 8, 2015, Plaintiff moved for class certification, appointment of class counsel, and default judgment. (ECF No. 78.) The Court certified the class and approved the appointment of The Rosen Law Firm as class counsel. (ECF Nos. 86, 87.) The Court denied Plaintiff's motion for default judgment without prejudice, advising that the motion could be renewed fourteen days following the conclusion of an opt-out period where class members had an opportunity to request exclusion from class-wide judgment. (Op. at 9, ECF No. 87; ECF No. 86.) Plaintiff mailed a court-approved Summary Notice of Pendency of Class Action on September 13, 2017 to all potential class members and published the same notice on September 17, 2017. (ECF Nos. 91, 92.) Plaintiff provided potential class members until November 7, 2017 to request exclusion. (Notice of Pendency of Class Action, Ex. A, ECF No. 91-1.) On November 21, 2017, Plaintiff filed this renewed Motion for Default Judgment, presently before the Court and unopposed. (ECF No. 93.)

Before delving into the merits of Plaintiff's Motion, the Court addresses the requests for exclusion. Two individuals sent notice of their request for exclusion from class judgment (Ex. A, ECF No 94-1), one timely and one untimely (Notice to Court Concerning Requests for Exclusion, ECF No. 94). Plaintiff asks that the untimely request be granted. (*Id.*) In its

---

[3] No summons was issued for individual defendant Aijun Jiang, and there is no evidence that Aijun Jiang was ever served. Plaintiff does not seek default judgment against Aijun Jiang, and this opinion does not apply to that individual.

3

discretion, the Court sees no reason to decline this request, and will honor both notices.[4] Neither Joseph Saberton[5] nor Mark Ramsay will be bound by class judgment. (Ex. A, ECF No. 94-1.)

## LEGAL STANDARD

In deciding a motion for default judgment, the court must accept as true any facts in the pleadings relating to liability, but need not accept any legal conclusions nor the extent and amount of damages claimed by a party. *See* Fed. R. Civ. P. 8(b)(6); *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). To be entitled to default judgment, a plaintiff must assert a legally sufficient claim for relief. *Mendez v. Puerto Rican Int'l Cos., Inc.*, 2015 WL 721031, at *2 (D.V.I. Feb. 18, 2015) (citing *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 n.23 (2d Cir. 2011) ("Most of our sister circuits appear to have held expressly that a district court may not enter a default judgment unless the plaintiff's complaint states a valid facial claim for relief.")).

In addition, default judgment requires: "(1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent person; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; and (6) an affidavit of non-military service." *Bank of Nova Scotia v. Abdullah*, 2013 WL 1846544, at *4 (D.V.I. May 2, 2013). Even where default judgment is permissible, however, the court must assess three factors

---

[4] Untimely requests for exclusion are accepted when untimely based on "excusable neglect." *Nelson v. Avalonbay Cmties., Inc.*, 2017 WL 6371302, at *1 (D.N.J. Dec. 13, 2017). Courts weigh a number of factors, including the danger of prejudice, length of delay, the effect of delay, and whether there was good or bad faith related to the untimeliness. *Id.* Because Lead Plaintiff asks the Court to excuse this delay and there is no evidence of harm or prejudice, particularly with unresponsive Defendants, acceptance and excuse are appropriate.

[5] The request for exclusion includes both Joseph R. Saberton and Berta Saberton as stock owners and potential class members.

4

to determine whether it is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The Third Circuit has cautioned that default judgment is a sanction of last resort—cases are more appropriately decided on their merits where practicable. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1990). Ultimately, the entry of default judgment is left to the court's discretion. *See Hritz*, 732 F.2d at 1180–81; *Young v. Beard*, 227 F. App'x 138, 142 (3d Cir. 2007).

## DISCUSSION

### I. Default Judgment Analysis

#### A. Sufficiency of Plaintiff's Claims

##### 1. *Claim under § 10(b) and Rule 10b–5*

"To state a claim under section 10(b) and Rule 10b–5, a Plaintiff must plead the following elements: (1) that a defendant made misstatements or omissions of material fact; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which the plaintiff relied; and (5) plaintiff's reliance was the proximate cause of plaintiff's injury." *Gigliotti v. Mathys*, 129 F. Supp. 2d 817, 820 (D.V.I. 2001); *see GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 212 (3d Cir. 2001). The Supreme Court and other Third Circuit cases have articulated a similar set of six elements: (1) material misrepresentation or omission, (2) scienter, (3) connection with the security purchase or sale, (4) reliance, (5) economic loss, and (6) loss causation. *See In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 277 (3d Cir. 2010); *see also Amgen Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 460–61 (2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011)). There is a heightened pleading

5

standard in securities fraud cases under 15 U.S.C. § 78u-4, whereby plaintiffs must plead with particularity facts creating a strong inference that the defendant acted with the requisite scienter—a fraudulent state of mind. *Gigliotti*, 129 F. Supp. 2d at 820–21. The element of reliance is met through two possible circumstances: the *Affiliated Ute* doctrine or fraud-on-the-market presumption. *Malack v. BDO Seidman, LLP*, 617 F.3d 743, 747 (3d Cir. 2010).

Here, Plaintiff has met all of the elements of a securities fraud claim. Defendants made material omissions by failing to disclose related party transactions and "Wu's own theft of company assets," thus rendering Xing's financial statements misleading. (Pl.'s Mot. Default J. at 6, ECF No. 93-1.) These material omissions on press releases and financial statements "giv[e] rise to a strong inference that [they] acted with the required state of mind." *Gigliotti*, 129F. Supp. 2d at 820 (quoting 15 U.S.C. § 78u-4(b)(2)). Plaintiff also argues that the element of scienter is met based on Defendants' systematic and repeated fraud, including Xing's failure to disclose the related party transfer of a different mining operation, Chifeng Haozhou Mining Co., Ltd., and R. Wu's involvement in fraud with Real Gold Mining, Ltd., another company in which he is a controlling shareholder. (*Id.* at 3–4.) Additionally, the Court observes that Xing's related telecommunications operations have similar fraudulent histories: Qiao Xing Universal Telephone Inc., was involved in a securities fraud litigation in the S.D.N.Y., filed in 2007 (*Malley v. Qiao Xing Univ. Telephone, Inc.* Compl., Rames Decl., Ex. 9, ECF No. 93-11), and the SEC also revoked the registration of Xing Mobile (SEC Order of Finding, Rames Decl., Ex. 12, ECF No. 93-14). Accepting as true all of Plaintiff's allegations and noting the evidence of fraud with Xing's related entities, Plaintiff has met the pleading standard. The Court can deduce that Defendants acted intentionally with the purpose to defraud.

The Court accepts Plaintiff's assertion that reliance is met by the fraud on the market presumption because Xing's stock was an efficient market (*see* First Am. Compl. ¶¶ 45–46) and the misinformation affected trading, or alternatively under *Affiliated Ute* because a reasonable investor would have traded on that misinformation. *See Malack*, 617 F.3d at 747. Loss and loss causation are well-established given the NASDAQ's suspension on trading and subsequent plummet in value of Xing's stock in the spring of 2017, amounting to approximately a 72% loss in value. (Def.'s Mot. Default J. at 5.) Evidence of loss is further articulated in Dr. Werner's Report, which employs statistical models to assess the effect of these omissions and subsequent disclosures on the stock price and thus on the class. (Expert Report of Dr. Werner.)

2. *Claim under § 20(a)*

Section 20(a) "imposes liability on controlling persons who aid and abet violations of the [Securities] Act." *In re Aetna, Inc. Sec. Litig.*, 617 F.3d at 284 (citing 15 U.S.C. § 78t). This is known as "controlling person liability," *id.*, where the defendant directly or indirectly controls someone liable under the Act and where the defendant was a "culpable participant" in the conduct alleged through action or intentional inaction, *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 485–86 (3d Cir. 2013). Because Plaintiff has pled the elements of a securities fraud violation under § 10(b) and Rule 10b–5, the Court turns to § 20(a).

Where R. Wu was the CEO and Chairman of Xing until November 21, 2011 and Xing undertook conduct that directly benefitted R. Wu, there is adequate basis on which to conclude that R. Wu was a controlling person who aided and abetted violations under § 10(b). *See In re Aetna, Inc. Sec. Litig.*, 617 F.3d at 284. Z. Wu, R. Wu's son, was Vice Chairman until November 21, 2011 and then became CEO and Chairman. (First Am. Compl. ¶ 12.) Jiang was CFO since May 2, 2011. (*Id.* ¶ 13.) These positions of significant power during the class

period[6] gave the individual Defendants access to and actual knowledge of non-public information about the business, internal operations, and finances—giving reason to infer that they participated in the underlying conduct. (*Id.* ¶¶ 16–20, 53–54, 61–62.) Therefore, there is also adequate basis to conclude that they were controlling persons that should be held liable under § 20(a). In sum, Plaintiff has asserted a legally sufficient basis for relief under the Securities Act.

B. Default Judgment Factors

Having found this class is entitled to the relief sought for the claims pled in the First Amended Complaint, the Court next turns to the appropriateness of default judgment. In this case, the preliminary criteria for default judgment have been met. *See Bank of Nova Scotia v. Abdallah*, 2014 WL 2976232, at *3 (D.V.I. July 1, 2014). None of the Defendants have entered an appearance or answered the Complaint in any way over the past four years. Defendants have been properly served outside of the territorial United States, in China, pursuant to the Hague Convention. (*See* ECF Nos. 52–65; Pl.'s Mot. Default J. at 5.) And the Clerk of the Court entered default against Defendants on July 7, 2014. (ECF No. 74.) Now, the Court will consider the default judgment factors set forth by the Third Circuit.

First, the class is prejudiced because its ability to pursue this claim would be impaired, *see Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982), if not entirely estopped, if default judgment were denied. Defendants were served, default was entered (ECF No. 74), Plaintiff issued public notice of the pendency of the class action (ECF Nos. 91, 92), and there is no response on the docket. In addition to Defendants' failure to answer or otherwise appear in

---

[6] The class period spans from May 26, 2010 to April 16, 2012. (Notice of Pendency of Class Action.)

8

this action, they have failed to respond to the SEC or appear at telephone conferences, despite the fact that the SEC concluded that its own service was reasonably calculated to succeed. (SEC Order of Finding.) Plaintiff will have no recourse if the Court does not grant judgment.

Second, Defendants have no meritorious or litigable defense—a dispositive issue for default judgment. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). There are no defenses reflected on the record, and on August 23, 2012, an SEC administrative law judge revoked Xing's registration after finding adequate evidence of securities violations (SEC Order of Finding). Based on the conclusions of the government agency primarily responsible for these types of violations, the Court finds it reasonable to conclude that Defendants have no meritorious defense.

Third, for the reasons articulated above, the Court finds Defendants' failure to respond culpable, "taken willfully or in bad faith," *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983), not merely negligent, *Sourcecorp, Inc. v. Croney*, 412 F. App'x 455, 460 (3d Cir. 2011). With adequate service effectuated by the SEC in 2012 and Plaintiff in 2014, Defendants had ample time to defend or otherwise reply. On balance, default judgment should be entered for Plaintiff.

## II. Damages

While courts need not accept a plaintiff's allegations of damages as true, *DIRECTV, Inc.*, 431 F.3d 162 at 165, 165 n.6 (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)), final judgment may be entered where damages are for a sum certain, Fed. R. Civ. P. 55(b)(2). Plaintiff must request the amount of damages to be awarded, and the court may conduct a hearing if necessary to determine the amount of damages sought. *Pirate Bay Charters, LLC v. Vachon*, 2017 WL 4287196, at *1 (D.V.I. Sept. 27, 2017); *see also Rainey v. Diamond*

*State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009) (quoting *Durant v. Husband*, 28 F.3d 12, 15 (3d Cir. 1994)).

Plaintiff seeks default judgment in the amount of $11,074,201.00. Bearing its burden of proof, this request is well-supported by the detailed expert report of Dr. Adam Werner, who provides full explanation as to the analytical models and calculations used to arrive at the damages value. (*See generally* Expert Report of Dr. Werner.) Dr. Werner found per share damages of $0.45 and in the aggregate, with 25,753,995 shares purchased during the class period, $11,074,201. (*Id.* ¶ 39.) While there is certainly ample support, both in academia and from the Courts for acceptance of the models he uses (*see, e.g.*, ¶¶ 24, 24 n.10, 32, 35), the Court is cautious to embrace these representations for such a significant judgment value. The Court would prefer to hold a damages hearing to have a full understanding and appreciation of the basis upon which Plaintiff reaches this number.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is granted. An appropriate order will follow.

Date: 1/2/18

ANNE E. THOMPSON, U.S.D.J.